We will hear argument next in Case 19-930, CIC Services v. the IRS. Mr. Norris. Mr. Chief Justice, and may it please the Court, CIC Services wants to challenge an IRS notice under the APA. That guidance document subjects an entire industry to a burdensome reporting regime, but it never went through notice and comment rulemaking. Congress did not exempt the IRS from the APA, and this Court has refused to carve out exceptions to APA review good for tax law only. While the Anti-Injunction Act bars many tax cases, it does not bar this ordinary administrative law case. CIC suit does not have the purpose of restraining the assessment or collection of taxes for three main reasons. First, CIC is challenging the notice, not the assessment or collection of any tax. Under direct marketing, the reporting requirements that the notice triggers do not implicate assessment or collection. While these requirements are enforced in part by tax penalties, CIC does not challenge the penalties, the IRS does not assess any penalties, and CIC is a law-abiding company that will never incur any penalties. At most, an order setting aside the notice would prevent the IRS from collecting future tax penalties if someone someday decided to violate the reporting requirements. But that kind of downstream attenuated effect on taxes does not count under direct marketing. Second, CIC's injuries have nothing to do with tax liability. Its injuries are the cost of complying with the notice's reporting requirements and the loss of business that comes with being labeled a reportable transaction. Third, CIC cannot raise its claims in a refund suit. There is no tax for CIC to pay here. The notice is not a tax, and CIC is a material advisor, not a taxpayer. To file a refund suit, CIC would have to gin up a tax by violating the reporting requirements, risking criminal and professional sanctions, and hoping the IRS agrees to assess at a penalty. The Anti-Injunction Act cannot require this, as this Court held in South Carolina v. Regan. Counsel, I think I heard you say that you're asking that the notice be set aside, but maybe it's a technical matter, but that's not actually what you're asking. You're asking for an injunction against the enforcement of the notice. Does that make a difference? I don't think so, Mr. Chief Justice. I think it is a technical matter. I think the way that a court would enjoin enforcement in an APA case is under 5 U.S.C. 706, which says you set aside the unlawful agency action. But even if you did need to enjoin the IRS from enforcing the notice as a technical matter, that still would not be the purpose of this lawsuit. Purpose, as this Court explained in Bray, means what the lawsuit is aimed at, not merely the incidental effect of it. And here, our suit is aimed at the notice. That is the thing that's being challenged and the thing we want the enforcement to be enjoined for. We did not ask for an injunction related to tax penalties. We didn't challenge the tax penalties, and no tax penalties are pending or could possibly be assessed. Well, these are tax penalties. That's what Congress called them, with the consequences that that entails. And I wonder if you think Congress doesn't have the authority to refer to it as a tax? That's not our argument, Mr. Chief Justice. These are tax penalties. They are taxes under the Code. But what we're challenging is a guidance document that imposes reporting requirements. Those reporting requirements appear in Chapter 61 of the tax code, not Chapter 68. And so they are not deemed taxes for purposes of the Anti-Injunction Act. I think you certainly have to agree that under its normal meeting that your approach would in fact restrain the assessment or collection, right? It would certainly be an impediment to just that. That's the significance, I suppose, of your asking for an injunction. Well, I don't think restrain means impediment, Mr. Chief Justice. I think it carries the definition from direct marketing. It would have to stop, and the thing that it would have to stop is the actual formal process of assessment or collection. And we don't think our suit does that because we've not violated the notice and the IRS has not begun or even threatened assessment or collection yet. Thank you, Counsel. Justice Thomas? Mr. Norris, how do you respond to the argument that this is just a way around to avoid the Anti-Injunction Act? Your Honor, we don't think the Anti-Injunction Act, as originally understood and the meaning it has today, says anything about a pre-enforcement challenge to a reporting requirement. Reporting requirements are not covered by statutes like this, as this Court said, in direct marketing. And I think the party that's engaged in sort of wordplay here is the government. If you look at the first sentence of the argument section of its brief, the way it has to fit our suit under the Anti-Injunction Act is by describing it as an attempt to violate reporting requirements without paying tax penalties. But of course, this suit is not – we don't want to violate the notice with impunity. We have brought a pre-enforcement challenge to the notice itself, and we don't want its reporting requirements to be reporting requirements anymore. We have no intention of ever violating the notice. We are a law abiding company that has no plans to incur tax penalties. Have you ever incurred a tax penalty? Not for violating Notice 1666, Your Honor. And if I point you to page 36 of the Association's amicus brief, the industry is not aware of any captive insurance provider or material advisor who has ever violated Notice 1666 or incurred any tax penalties. Let me ask you, the last clause in the Anti-Injunction Act reads as follows, whether or not such person is the person against whom such tax was assessed. Does this suggest that there has to be a pending tax liability for the Anti-Injunction Act to apply? Justice Thomas, I think was assessed in the past tense gives you a good sense of what the Act's core is. And the core, of course, is where tax penalties have been already assessed or the taxpayer has already committed the taxable conduct, and so tax penalties are coming. But that language, according to this court in Regan, is largely irrelevant to the overall scope of the Act. Regan said that that language really was just taking care of a new cause of action that Congress created in 1966. It doesn't tell you too much, but to the extent it tells you anything, I think it supports our interpretation. Thank you. Justice Breyer? I'm thinking of you're having some way of getting their decision reviewed. Why can't you state your underlying claim, which is you have to, IRS, promulgate this kind of rule, reporting requirement, only after having a rulemaking. So what you do is you file a claim, and if they say no, you go to court and say that decision was arbitrary, capricious, and abuse of discretion because they have no other way of doing what they want to do except through a rulemaking. And there you get exactly the review that you're trying to get now. Justice Breyer, in South Carolina v. Regan, this court said that the plaintiff must have an alternative way to raise his claims in a refund suit or in a judicial suit. So I just told you the alternative. Right. And my response to that, Justice Breyer, is that your alternative does not allow us to raise our claims. That would be indifferent. Isn't your claim that they should have done this through a rulemaking and not through — maybe I have that wrong, but I thought that was your claim. That is our primary claim. So what's the problem? What's the problem? You go and you raise that claim, just the Why can't you do that? Well, our claim, Justice Breyer, is a challenge to Notice 1666. That route that you described would be a challenge to the denial of our petition for rulemaking. And it would not be a notice and comment challenge. It would be an arbitrary and capricious challenge, as you mentioned. Well, an arbitrary and capricious challenge for failing to use notice and comment. I think I disagree, Justice Breyer. I think it would be about whether it should have engaged But regardless, those sort of post-petition denial cases have a very, very high standard, a high version of the arbitrary and capricious standard. I see. I see what you're saying. It would be a different type of claim. Okay. That's all I have. Justice Alito? You offer several theories for why the text of the N.A. Injunction Act does not bar this suit. It would be helpful to me if you could just complete this sentence and assume this is something we would write in an opinion. Quote, a suit challenging an IRS regulation is barred by the Anti-Injunction Act when? I think a suit like ours, Justice Alito, is barred when the taxpayer or the person subject to the notice has already violated the regulatory requirement such that tax penalties will imminently be assessed or they have been assessed already. Then you truly can say the plaintiff's purpose is to restrain the assessment or collection of the tax penalties. But in a pre-enforcement challenge to solely the regulation itself, that would not be true. Well, is that a restatement of your Regan argument or is that something else? I don't think it's a restatement, though. I think Regan and several of this Court's cases are all getting to the same point, which is what is the purpose of the suit? And what this Court asked is what is it that the plaintiff is challenging? Is that the assessment or collection of taxes or not? Why did the plaintiff bring the suit? Specifically, what are its injuries and are those injuries tax liability or not? And third, does the plaintiff have the traditional refund suit option available? You know that a case is about a tax. If the plaintiff can simply pay the tax and sue for a refund, which none of those factors point in the direction of the Anti-Injunction Act applying here. Well, there seem to be several factors packed into the answer that you just gave. If purpose is what is key, I'm not quite sure how a court can separate out the purposes that are at issue in a situation like this. Well, Justice Alito, it's not a subjective inquiry. We think the Anti-Injunction Act is a procedural threshold statute. It has to be an objective inquiry and it has to be something the court can determine on the face of the complaint. And if you look at direct marketing, Bob Jones, and Regan, I think those cases point you to the questions that I raised, which are what is being challenged, what are the injuries, and does the plaintiff have a refund suit? And all of those are entirely objective inquiries that you could determine on the face of the complaint and the relevant statutes. All right, thank you. Justice Sotomayor? Counsel, I go back to your answer, to the answer you gave to the Chief Justice. Your complaint asked to declare the notice invalid, and hence a declaration that penalties can't be assessed against you. I don't see how you get around our cases, Bailey, Alexander, and several other cases where we have said a taxpayer can't plead around the AIA simply by alleging that tax is unlawful. Justice Sotomayor, our complaint asked to challenge the enforcement of the notice. It did not ask for an injunction restraining tax penalties, and that's because the notice... The consequence of enforcing the notice is that you don't have to report and the government can't collect taxes. If you're talking about looking at practical consequences, your failure to provide the notice results in a tax. That's right, Justice Sotomayor, and I would re-give my first answer, which is under the APA, all a court would have to do is set aside the notice, but even more directly to your point, I would point you to Judge Silverman's opinion in Seven Skies. The statute asks what the purpose of the suit is, and purpose, as this court said in Bray, means aimed at. We're aimed at the notice. Counsel, how do we get past Bob Jones and Alexander, where the purpose was to stop the declaration of the IRS's declaration that certain entities didn't qualify, that those entities at issue didn't qualify for charitable deductions? That wasn't having to do directly with tax collection, but the consequence would have been tax collection. How do we get around those cases? That's right, Justice Sotomayor. That is superficially like our case, but unlike our case, in those cases, the revocation of tax-exempt status, the thing being challenged, did not injure those plaintiffs. The sole injuries alleged in their complaint were their tax liability, and another important distinction between those cases... Counsel, that seems like the worst case for your argument. It would seem to me that if a lawsuit stops the IRS from collecting taxes from you, that's exactly what the Anti-Injunction Act was intended to prohibit. We disagree, Your Honor, and I think another factor in Bob Jones and Americans United that's missing here is that the court said those plaintiffs, because their injury is tax liability, they could simply pay the underlying income, unemployment, and Social Security taxes and then sue for a refund. We don't have that option. There's no tax available for us to simply pay because our injuries are not tax liability. Thank you, Counsel. Justice Kagan? Mr. North, I'm wondering if you could help me out on the role that South Carolina v. Regan plays in your argument. As I understood it coming into this argument, what you were saying is that even if I'm with the government sort of every step of the way as to what the AIA requires, that there's still a kind of back-end equitable exception that's created by that case. Is that what you're saying, or are you saying something different? That's our argument, Justice Kagan. I meant to say just that. When you're assessing a suit's purpose, the fact that a tax is not available to pay for a refund suit is also relevant, but you've described Regan correctly. It is an exception to the act. Okay. I guess what I'd like to know is where does that exception come from and what justification would we have to extend that exception to a case like yours? I think our case is maybe the easiest justification for the exception. I read Regan to be an application of the whole code canon that Congress does not require you to violate one provision of the tax code in order to sue for a refund. That's contradictory and not a way that you would reasonably read the tax code to operate. In a normal Anti-Injunction Act case, the Anti-Injunction Act tells you to comply with the tax code, to pay your taxes, and then go sue for a refund. You're not suggesting that that is the rationale that's used in South Carolina v. Regan, are you? To me, the rationale that is used in that case is really equitable in nature. It doesn't refer to the statute. It doesn't ask about how we should interpret the statute. It just says this seems fair to us. Regan may not be the most text-based opinion, but the same could be said of Bob Jones. Sometimes I think the rigor that was present in direct marketing is missing from these cases, but I think Regan was correct that Congress never meant the Anti-Injunction Act to apply without a refund, too, and that they have always been side-by-side, and that was the logic of that decision, and we think that extends neatly to a situation where the government would require us to violate the tax code in order to trigger a refund. I guess this goes back to Justice Breyer's question, but it seems to me that your suit is different from Regan in two ways. One is that there was a constitutional claim there, and the second was that the court kept on saying in Regan that there's absolutely no alternative remedy available. It's not just a disfavored alternative. I mean, there's no alternative remedy. Do you take issue with either of those two differences? I don't disagree that those are differences, Justice Kagan. I just don't think that they matter. This court has said over and over that the constitutional versus non-constitutional  for purposes of the Anti-Injunction Act, and I think while South Carolina truly had no refund suit available, we are in the same situation in the sense that the only way we can get a refund is by committing a crime, risking imprisonment and massive fines, and violating our professional obligations as attorneys and accountants. So a refund is not available to us either. Justice Gorsuch? Good morning, Mr. Norris. I'd like to get your response or thoughts on Judge Sutton's concurrence in the denial of rehearing en banc, and he expressed one concern that given the fact that the Anti-Injunction Act and the Tax Injunction Act are so often interpreted in parallel, that by vindicating a taxpayer, federal taxpayer's interest today, we might slight state sovereign concerns tomorrow, creating the risk that too much haste in stopping one abuse of power might open the door to another. I'd like your thoughts and response to that. Yes, Justice Gorsuch. The Anti-Injunction Act and the Tax Injunction Act I think that link is something that can be undone. The Tax Injunction Act was modeled on the Anti-Injunction Act. They use the same terms in the same way, and this Court has frequently linked them. But if the concern is that by saying the Anti-Injunction Act does not apply here, that that will make it less applicable to state taxes, I think in terms of the facts of our case, that ship has largely sailed. Direct marketing allows pre-enforcement challenges to state tax reporting requirements, and it allowed them, despite an uncontested assertion from Colorado, that that lawsuit would have cost $100 million in tax revenue every year. And I think what this Court has to do is look at the precise language of each statute and apply it only as far as the language goes. And neither statute, as this Court said in direct marketing, was meant to cover the entire waterfront of all cases involving taxes. It was targeted to suits to enjoin assessment or collection. So the ship's already sailed on the state side, and the only question is whether federal taxpayers get essentially the same benefit. That's right, and it's worse than that because most of what the IRS does via regulation and guidance documents is enforced in some way by tax penalties. So if the government is correct here, then the IRS is going to be the one that's going to get the benefit. Justice Kavanaugh? Thank you, Chief Justice, and good morning, counsel. I wanted to give you my thought about how I'm looking at this and get your reaction. So on the text, I see this as a subchapter 68 penalty that therefore qualifies as a tax for purposes of the Anti-Injunction Act. On direct marketing, it seems to me that that's arguably distinct because the penalty there was not a tax. Here it is so defined as a tax and therefore comes within the scope of the Anti-Injunction Act. But then we get to the question, and there's other questions, but the regulatory tax question, the Bob Jones and Alexander cases, and I want to get your reaction to this, which is I think reading those cases poses a problem for you, but I'm not sure those cases should be read for all they're worth. In other words, I'm wondering whether those cases we should back away from some of the implications of those cases for challenges to regulatory taxes for some of the reasons you've given here that it seems somewhat unfair, as it did even in those cases, to force someone to go through the process that you're talking about here. So should we back away from Bob Jones and Alexander? How would we do that best without flat out overruling them, or should we go that far? So, Justice Kavanaugh, I think the way to cut through all of that is our South Carolina v. Reagan argument, and I would just note that in the Florida Bankers case in the D.C. Circuit, Reagan was not an argument raised by the plaintiffs, and in fact the government pointed out that it had been waived there. But I think that's the key difference. Bob Jones and Americans United said that those plaintiffs, because they were challenging their tax liability, really could simply pay the underlying taxes, which is a lawful act, and go sue for a refund. But isn't that, as Justice Sotomayor pointed out, just a pleading exercise of how you frame it in your complaint, challenging actually the regulatory part of the regulatory tax, as opposed to the enforcement of the liability itself? I don't think so, Justice Kavanaugh. I agree that a case involving a regulatory tax, truly, would be difficult. So perhaps NFIB can be understood as such a case because the individual mandate was upheld because it was treated as a tax itself. But here we don't have a regulatory tax. We have a reporting requirement that exists in an independent statutory provision that uses the word shall. It has the force of law. Well, it's a regulation that's enforced by a penalty. So it is regulatory, a reporting requirement, enforced by a penalty that in turn Congress has defined as a tax. So it does seem like a regulatory tax in that sense. I don't disagree with that, Justice Kavanaugh, but it's also enforced by criminal sanctions. So that's how you know it is not just a tax. Or it's not really a tax at all. It is an independent regulatory requirement. I think that makes all the difference because when you're asking what the purpose of a suit is, you want to know what it's aimed at. And if it's aimed at a regulatory tax, that's a much different case than it's aimed at a regulation that is not itself a tax and that merely has tax penalties as one consequence for violating it. Justice Barrett? I want to follow up on Justice Alito's question. He asked you to state a test essentially to help us decide when something falls within the AIA and not. And the government's approach in thinking about why this is different from direct marketing is pretty straightforward. If it's called a tax, Congress put this, it called it a tax even though it's a penalty, it called it a tax which seems to indicate Congress's desire to bring it within the AIA. But you're saying it's more, it's more subtle than that, it's more complicated. You know, this is, we can't, we don't have a choice of just paying it and then seeking a refund later. So could you be a little bit more specific than you were with Justice Alito of what test do we use to figure out if it's within the AIA or not? Yes, Justice Barrett. I think the IRS's position is simple in that if any regulation is attached, has a tax penalty attached, it triggers the Anti-Injunction Act but that largely, as I said before, exempts the IRS from APA review. So the text of the Anti-Injunction Act asks whether your purpose is restraining assessment or collection and we know what restrain, assess, and collect mean from direct marketing already. So we think the way to establish this purpose of a lawsuit which we admit is fairly unusual language for a statute but the way to do purpose comes from this court's cases and what you would look at is what action is the plaintiff challenging and whether that's assessment or collection or not? What are the plaintiff's injuries and are they independent from tax liability or not? And what else, how else could the plaintiff bring the lawsuit? Do they have a traditional refund suit available or not? And we get those from Bob Jones, direct marketing, and Regan and I think those three questions will answer just about every Anti-Injunction Act case and here they all point in the same direction and demonstrate that that is not our purpose. Would it be cleaner for us to go the Regan route but maybe phrase it this way that this is covered by the AIA however because you would have to incur criminal penalties in order to sue that you have no adequate alternative remedy so even though the AIA applies it doesn't bar your suit. Would you be satisfied with that approach? We would, Justice Barrett. We just want to go litigate our APA claims and that resolution would be fine with us. Thank you. Minute to wrap up, Mr. Norris. Thank you, Mr. Chief Justice. Notice 1666 labels my client's industry a reportable transaction, a kind of scarlet letter that triggers burdensome reporting requirements and makes it much harder to attract clients. Labeling something a reportable transaction is serious which is why Congress told the IRS to use notice and comment rulemaking. When the IRS refused to do that CIC did precisely what we want law-abiding citizens to do. It filed a pre-enforcement suit under the APA and it is fully complying with the reporting requirements while its case is pending. According to the government however what CIC should have done is deliberately violate the tax code. The government's path would require CIC's members to commit a crime, violate their ethical obligations, and convince the IRS to assess the tax penalties. No law-abiding company or individual would ever do this. Ruling for the government thus does not delay judicial review. It denies it altogether. Thank you. Thank you, Counsel. Mr. Bond? Mr. Chief Justice and may it please the Court. At the heart of this case are two code provisions that are unambiguous and a third whose scope is disputed. The first clear provision is the Anti-Injunction Act which bars a suit for the purpose of restraining the assessment or collection of any tax. That text and this Court's decisions make clear that a suit cannot proceed if the relief it seeks would legally bar the IRS from collecting a tax regardless of the plaintiff's subjective motive for bringing suit as I understand Petitioner now to acknowledge. The second unambiguous provision is 6671 which provides that penalties imposed in subchapter 68B are treated as taxes. And by far the most important consequence of that provision is that 68B penalties are subject to the AIA which precludes pre-enforcement review and instead channels disputes to refund suits. Together those two provisions resolve this case because Petitioner's complaint on its face at page 16 seeks to enjoin the enforcement of reporting requirements that are enforced by 68B penalties. Petitioner leans heavily on a third provision section 7203 which makes certain willful violations a misdemeanor and which it says requires committing a crime to obtain judicial review. But Petitioner misreads that provision which does not criminalize the very avenue of review this Court commended 93 years ago in Sullivan and has reaffirmed since a filing a timely return that asserts a good faith objection to reporting certain information in order to obtain review. Petitioner can do that by incurring the penalty paying it and suing for a refund. But even if 7203's application were ambiguous the way to harmonize all three provisions is to hold that Congress meant what it said unambiguously in 6671 and the AIA that these penalties are treated as taxes that must be litigated in refund suits and resolve any lingering dispute about willfully to preserve Congress's choice. Petitioner's approach of leveraging one disputed word in another provision to override the clear text of 6671 and the AIA has things backwards and Petitioner has offered no limiting principle to avoid subjecting many other similar requirements enforced by taxes to pre-enforcement suits. Mr. Bond, I think direct marketing is a real problem for you except you have one big answer to it which is that Pick it up guys, please! That case did not involve a tax penalty and this one does. So, I'm curious about how much weight you think that can hold. If Congress passed a law saying that there is a $1 tax penalty for the violation of any IRS regulation, does that mean that there would be no pre-enforcement review at all for any tax regulation? Yes, if the penalty imposed is designated by Congress as a tax, then that suit would be barred by the AIA. We think that difference from direct marketing is dispositive because of the text of the statute as this court has repeatedly construed it. Of course, that issue was not presented in direct marketing so we don't think the decision speaks directly to it but we think this court's other decisions do that regardless of what the plaintiff's subjective motive is, whether it claims that the tax is really exerting some regulatory effect. This court has time and again rejected those arguments and looked instead to what Americans United called the relief requested. If that relief would legally bar the collection of a tax, then yes, Congress made the determination to channel that dispute to refund suits. It's not eliminating review, it's simply channeling it to a different forum. And we know that that review is real because that's been the case throughout the AIA's history. Going back to Bailey v. George, at the same day that the court held the pre-enforcement suit bar, the court reached the merits in a refund suit. Same with Bob Jones. It decided not to hear the pre-enforcement challenge but several years later, Bob Jones was able to litigate the merits. Do you think that there is a presumption in favor of pre-enforcement review? We think at least that any presumption in favor of pre-enforcement review is, as this court said in Illinois counsel, much weaker than the general presumption of having some review at some point. The court has repeatedly made clear in Thunder Basin and... So is that a yes? There is a presumption in favor of pre-enforcement review? I don't think this court's decisions establish a presumption in favor of pre-enforcement review but however you characterize the presumption, it is overcome by the text of these statutes because Congress said in 6671 that these penalties are taxes and virtually the only consequence of that choice is to... Is there any significance to calling these penalties a tax? I mean, it's the same, right? I mean, if it were a penalty, the consequences apart from the issue we're talking about would be the same. There are very few and very minor consequences apart from the AIA and we think that cuts strongly in our favor that because Congress classifies these as taxes knowing that the elephant in the room consequence is that they would be subject to the AIA, that Congress made the determination that the AIA should apply. If there were lots of consequences, that would be a much weaker inference. Thank you, counsel. Justice Thomas? Thank you, Mr. Chief Justice. Mr. Bond, how would you define the word or the verb to assess? So for purposes of this case, we take the court's definitions in direct marketing as given. We're not challenging those for purposes of this case. We accept assessment for purposes of this case as the court defined it in the court's opinion as involving that final step prior to collection. Our point here is not that assessment should be read more broadly for purposes of the AIA here. We're saying that even if you take all of those definitions as given, the relief that petitioner's complaint seeks on its face would restrain the assessment or collection. So how attenuated or how indirect can an action be before it ceases to be to affect the assessment or collection? Well, I think the way to think about that is that the text of the statute says we're looking at the purpose of the suit. And so we look, as the court has done before, to the relief requested as the best evidence of what the suit's purpose is. So at least in a case like this one where the suit on its face seeks to enjoin enforcement, which is done by assessing taxes, you would say the suit is one to restrain those taxes. I think you get into difficult line-drawing problems when you get further and further removed. So, for example, the example that we discussed in our brief of the EPA diesel regulations, I think you could have too attenuated a chain of connection in order to impute the purpose of the suit to be restraining the downstream tax, where, for example, the plaintiff challenges only an independent regulatory regime enforced completely separately by an additional agency that also is incorporated in part into the tax code in some indirect way. The first suit may have some downstream consequence, but we accept that that may be too attenuated to say that the purpose of the suit is to restrain the assessment or collection of a tax. But you don't have any of those difficult line-drawing questions here. Petitioner says you should determine what the suit is aimed at, but the complaint on its face tells you what it's aimed at. If Petitioner prevails, the IRS will be unable to enforce this notice requirement or this reporting requirement, and it does so by assessing taxes. And that, I think, is the end of the case. Well, normally, when you think of taxes, Mr. Bond, you think of a tax liability or the tax based on some business activity or income-generating activity, record-keeping related to that activity. Where's the income here, and where is the tax liability? Well, I'd say a few things. First, to the concrete point about where the income and liability are, I think this particular penalty that Congress denominated a tax functions in a way as a substitute tax for taxpayers who don't report this information that the IRS thinks may pertain to a tax evasion strategy. So how is this tax different from any ordinary fine or penalty? I'd say two things. First, Congress denominated it as a tax, and the point of a statutory definition like this is to say that something that is not ordinarily thought of to be a tax is to be treated as a tax. And I think the Court has for a century recognized that Congress can do exactly that. The Court rejected the argument that I think underlies that question in George 98 years ago, where the point was, look, the argument was made, this is not really in the child labor tax an effort to raise revenue. This is really just an effort to penalize people engaged in certain child labor practices. And Chief Justice Taft's opinion makes clear that doesn't change the outcome under the text of the Anti-Injunction Act. Thank you, Counsel. Justice Breyer? Well, I think their point, or a point, is the Lincoln point. I mean, calling something a tax doesn't make it one. There are still differences. And one of the differences, they say, is this. If the IRS tells me I owe some money, I pay it, but I can get it back. If the IRS, if it's illegal. If the IRS here tells me spend $100,000 gathering this information and give it to them, I can't get that money back. I can't declare it illegal. There's no way to do it. There's no way to do it. I have to keep doing it year after year. Of course I'll have to follow it. I'm not going to violate it. So that's a big difference. And normally we presume there is some method of getting judicial review for an action requiring me to do something by the government when that action is not lawful. So what's the way? How do they get review of it? The way here is to follow the approach Justice Holmes wrote for the court in Sullivan 93 years ago, and that the court reaffirmed in a case called Garner v. United States, where what you do is you don't simply fail to file a return. You don't violate it in that sense. Instead what you do, and the court has upheld this in the context of Fifth Amendment objections, is you file a return and state your specific objection to particular information that you don't want to provide because you believe in good faith that it is not legally required. The IRS can then assess a penalty, which then you can sue over in a refund suit. But it's quite a lot of money. They don't want to risk what they think of as a vast amount of money, so they won't pay the penalty. They don't want to pay the penalty. They want to follow it. So you mean, if they follow the rule, they can say, we're doing it under protest, and then file to get back a penalty they've never paid? I'm missing something. Well, I think that's the same logic that underlies the argument the court rejected in George, involving the child labor tax law. I think in that circumstance the argument was made, look, surely Congress intended there to be compliance with these requirements and didn't intend to raise revenue along those lines. And that's the argument the court rejected. I'm not saying it's not a tax. I'm simply asking, how do they get judicial review without paying the penalty, which I'll call a tax, how do they get judicial review of the lawfulness of the order that says, of the report that says, give us the information? How do they do it? They have to engage in the conduct that they believe to be lawful. They simply know that the government disagrees with that. And until the Declaratory Judgment Act, that was the normal way litigation proceeded. No, I don't understand it. You'll have to do it more slowly. I'm sorry. They follow the report and give you the information. Okay? That's what you're saying? No, Your Honor. What they do is they file their ordinary tax return, or in the case of a material advisor, they just send us a letter objecting to providing this information. Do they give you the information or not? No, they withhold the information. They withhold the information. Therefore, they have violated the reporting requirement. Therefore, they are subject to paying an enormous fine called a tax. That's what they don't want to do. So I'd say two things, Your Honor. First, if they are right that their conduct is in fact lawful because they disagree with us about that, then when they get their judicial determination, the result will be that they never violated the law. Our view is different, and they run that risk, but if they are right about the underlying merits, they will be under the law. Thank you. Justice Alito? The Code says that willfully failing to comply with the reporting requirement is a crime. So I really don't see how they can get review without committing a crime. And I think the answer is in this Court's decisions in Sullivan and subsequently in Garner, where the Court said in both the precursor of 7203 and 7203 that it is not a willful violation to file a return or to subject yourself to examination and assert your good faith objection to providing... Well, why is it not a willful violation? Under Cheek, it's certainly willful. They say, look, I understand that under this guidance and under IRS regulations, I'm required to do this, but I sincerely believe that it's unlawful. Isn't that exactly the situation in Cheek where somebody says, I'm not going to file a tax return, although I know that the Internal Revenue Code requires me to file a tax return, but I sincerely believe that the Internal Revenue Code and the Internal Revenue Service are unconstitutional. I don't see the difference. I'd say a couple of things. First, Cheek in footnote 10 expressly distinguished the kind of procedure that we're describing from Sullivan and later cases. It's like the case called Murdoch that is to the same effect. But second, to the line you're drawing and you're suggesting between saying the action is unlawful versus I don't believe I'm actually required to do it. I don't think that line works in petitioner's favor here. Petitioner's argument at bottom is that it is not required to provide this information because the statute only requires it to submit information covered by regulations, and here the IRS has not issued a valid regulation. So I think petitioner's argument falls on the first side of that line. Now, I understand the concern that the device... I don't understand that at all. They say that I am not required to do this because the guidance is unlawful. Right? They say that the guidance is not a regulation and only regulations can require them to supply information. That is their... Yeah, and that's... Is there a difference between what you just said and saying that the guidance is unlawful? I think it's a fine distinction that was the focus of the debate between the majority and the concurrence in Cheek, and to the extent you think there's some uncertainty, I think the way to resolve it is to say, look, we know what Congress intended to happen to these penalties because it said in 6671 they are taxes and that means they're subject to the AIA. So I think you would resolve any tension by saying, whatever willfully means in some other context, in this context, it does not criminalize the avenue of review that Congress clearly made the avenue for this particular kind of penalty. And I think the... So this is a rule of willfulness that applies only to... only under the Internal Revenue Code? Well, I think that is what Cheek recognizes, that willfulness, as the Court has said in other contexts, takes its meaning from context. And the Court and the majority in Cheek was clear that the meaning of willfulness is particular in the tax context. It has a heightened meaning. And although Cheek doesn't flesh out exactly what that means in the context of the procedure that we've identified, that Sullivan and Garner approved, means I don't think Cheek disturbed that. So I don't think that it's remarkable to say that the meaning of willfulness is different in this context. It has been different for decades under this Court's decisions. And we're simply applying that consistent with what this Court has said is the appropriate avenue for a taxpayer to raise its challenges to requirements it believes are invalid. And I think that's not any different from any taxpayer who believes that a particular tax, a substantive tax, is invalid. All right, I understand the position of the United States. Thank you. Justice Sotomayor? Counsel, in the normal situation, and I say normal, when I have to report something so that they can assess taxes against me, and I have a claim that I don't owe the tax, but you say I do, I pay the tax, I then can sue to say that I should have not had to pay the tax. How many laws are there like this one? Disclosure laws where I wouldn't have to pay a tax, I only have to report certain information so that someone else can pay a tax. Do you have any idea how many laws there are like that? I can't give you a precise number, but it's true that within the Internal Revenue Code there are a number of third-party or informational reporting requirements that fit that description, and I think that cuts strongly in our favor. All right, but can you hold on, Counsel? The reason I'm asking this question is is something that Justice Breyer was getting at, which is if they give you the information you need, they may have spent $50,000, but they don't need to pay the tax, and we never have said that someone has to spend money to not pay a tax they don't owe. Does that make any sense to you? They can never get that money back if they give you the information or if they don't give you the information. So here's the way I think the Court should look at it, Your Honor. I think it's no different fundamentally than any taxpayer who wants to engage in a particular transaction and wants to know in advance, would prefer to know before it undertakes the preparatory steps of the transaction or commits to the transaction, what the tax consequences will be. And if it's afraid of losing in the tax dispute that might follow, it might forego that opportunity. That's all right. I see less problem for them getting the $50,000 back because you're right. To prepare for disclosure, we all spend money and we never get it back if we didn't have to make it. But the idea is that committing the crime, they would have to fail to pay the tax and then pay this enormous amount more because they thought they were legitimately entitled not to provide you with the information. I'd say a couple of things. First, I don't think it's true that they have to face some enormous penalty in order for this to happen for two reasons. First, they could choose to follow the procedure outlined in Sullivan with respect to a single penalty and comply with respect to the rest and they wouldn't face the tax penalty with respect to all of the other items. And in addition, in our understanding, this penalty is what's known in tax law as divisible, meaning that you can pay only a single part and then seek a refund over that and the government has to cross-claim for the rest. So it's not like they're immediately on the hook for massive liability the minute they choose to follow the procedure Congress outlined to obtain review. And in addition, I think it's clear from this Court's cases going back a century that the mere fact that there would be a large liability to pay if you follow the refund procedure does not mean that this is a violation of due process or otherwise warrant departing from the tax of the AIA. Justice Kagan? Mr. Bond, I'd like to talk to you about this language for the purpose of you said in one of your prior answers that the key to that language is we should look at the relief requested. And that seems reasonable enough. The only problem is I'm not sure it really helps you here. If I think about this lawsuit, it seems to me that the relief that's being requested is the invalidation of a reporting requirement. Now, it's true that if it's successful in invalidating a reporting requirement, then you don't get to enforce that reporting requirement through a tax penalty. But the more simple way of thinking about this suit, and I think truly what plaintiffs here are doing, is to say they're trying to invalidate a demand that they disclose information. So how does that fit under the AIA? I would point you to the top of page 16 of the complaint. And the two, aside from the boilerplate request, the two items of relief they seek are to permanently enjoin the enforcement of this notice. And we know that notice, that this notice is enforced by tax penalties. And then they seek a declaratory judgment, a judgment declaring that the notice is unlawful. But under the... But suppose that they wrote a complaint with my views in mind. And they just said, this is what we're seeking. We're seeking to invalidate the reporting requirement. So does that fall under the AIA or not? We do think it falls under the AIA. It certainly falls under the tax exception to the Declaratory Judgment Act, which Petitioner concedes in footnote one has the same scope in his claim rises or falls under declaratory relief with the claim for injunctive relief. So we think that would be barred. I guess what I'm asking is, isn't the tax penalty here completely derivative? And what they're really seeking is what they're objecting to, what they have problems with, is the demand that they disclose information. And remember that that demand is backed up not only by the tax penalty, but also by a provision that allows criminal penalties, put you in jail, fine you. So why shouldn't we understand that that's an independent regulatory requirement, independent of the tax that they're objecting to? So it's not for the purpose of stopping a tax. I think you need to determine the purpose of the suit from what relief the suit would obtain if Petitioner prevailed. And that relief here is barring enforcement. And I'd say in addition... I think it's not. It's invalidating the notice. That's the relief, invalidating the notice. It's true. You'll never be able to enforce an invalid notice. But that's not the essential purport of the suit. I'd say two things. First, even if you just view the suit as seeking to invalidate the notice, I think it's still fair to impute to the purpose, as the purpose of the suit, preventing enforcement. Because that's the real-world reason why Petitioner is bringing this suit in the first place. They don't want to face the penalties for noncompliance. It may or may not be the real-world reason. I mean, suppose that the penalty here was $5. You know, Congress just put this tax penalty in to try to make sure that it was put under the AIA. So the real purpose is not to avoid the $5. The real purpose is to avoid hiring a lawyer and spending all the money to disclose information that you want to keep secret. And the reason Petitioner cannot do that as it alleges in paragraph 40 of its complaint, is the penalties. If there were no penalties, there would be nothing for Petitioner to sue about because it arguably would not even have Article III standing. So I think that is the way to look at the suit, even if its ultimate goal is to get rid of the burdens of compliance. Thank you. Justice Gorsuch? Good morning, Mr. Bond. The APA was promised as a solution to the growing power of administrative agencies over the national economy. And the promise was in part that agencies would have to follow certain basic due process requirements, like telling the public in advance what it intends to do and giving them an opportunity to comment. Today, of course, the IRS regulates enormous swaths of the national economy, from our medical care to our pensions to the entire nonprofit sector, a lot of the educational sector, child care. And some estimate that the IRS today fails to comply with notice and comment requirements of the APA about 40% of the time. Should we be concerned? I don't think you should be concerned because Congress did not preclude review of these. It channeled them to a particular forum. And real-world suits happen in which the kinds of claims you're describing can be litigated. We cite in our brief the Mann Construction case, which is pending in district court right now. And just recently, the district court denied a motion to dismiss on an APA claim. So our view is not that these kinds of challenges can't be brought or that the IRS should be insulated from review entirely. The point is simply that Congress made a determination of how that review should proceed. And it said that this kind of review of things that Congress deems to be taxes should happen in a post-payment world of a refund suit. And I think the concerns on the other side would effectively negate that determination that by designating these penalties as taxes, they should be treated like taxes and litigated in the way that taxes historically have been. Mr. Bond, if we were to find that the avenues that you've outlined to Justice Alito are either hard to square with the statute or are insufficient, like going to jail, we don't normally require somebody to exercise their notice and comment rights from federal prison, what do we do then? So I think for the reasons we've outlined, that's not the way to read the statute, but if you conclude that that's a possibility, we invite you to say in your opinion that that's not what 7203 means because that's not what the court has understood it to mean for nearly a century. And I think that in that circumstance, you should say that there is this other avenue to review and that there's no due process entitlement to have pre-enforcement review. But in all events, I think the concern that there would be this massive burden of facing financial penalties is simply overstated. Petitioner can incur a single unit of the penalty or can pay a single unit because in our view this penalty is divisible. Right. I got those arguments. Thank you, Mr. Bond. Thank you. Justice Kavanaugh? Thank you and good afternoon, Mr. Bond. I'm going to tell you where I think I'm with you and where I think I have a problem. On the text of the Anti-Injunction Act, I think you have a strong argument, subchapter 68, and how that fits here. This penalty is designated a tax, therefore it fits within the AIA. Direct marketing, I think you have a good point. That was not subject, that penalty was not denominated a tax and therefore the reason the two cases would be different is that the text of the statutes is different. You make a good point there, I think. In terms of the Regan point, how you would do this,   objecting to it and you then have post, you have proceedings after the IRS assesses the penalty. That is not the case. I think you have a good point there. That all makes sense to me as well. The criminal point, Justice Alito's point, you just said the court could flat out say that it's not a willful violation when you're challenging the reporting requirement as being unlawful. So that, we could say that. Here's where I think I have a concern. On Bailey and Bob Jones and Alexander, those cases, you were having a discussion with Justice Kagan either or. Are you challenging the regulatory aspect of this or the reporting aspect of this? Are you challenging the tax aspect? I think you're challenging both as a plaintiff, really. And what Bailey and Bob Jones and Alexander seem to say, and this supports you, is that when you're doing that, you have to go, the AIA applies. And I agree with you that those cases support you. But I also think Justice Gorsuch makes a very good point that the current philosophy, those cases are from a different era. The current philosophy of challenging administrative action is different, as the Chief Justice said, with presumptions. And here, where I really think Bailey and Bob Jones and Alexander may be different, is when the penalties are so high if you lose. In other words, you have to bet. And if you bet and lose, the penalties are so high that it's going to deter you from challenging the regulatory reporting aspect in the first place. So, long wind up, bottom line question. Shouldn't, as a matter of fairness, modern era of administrative law, presumptions, shouldn't we carve out an exception from Bob Jones, Alexander, Bailey, when the penalties for trying to challenge something are so high that it's going to be coercive and effectively deter you from bringing this kind of challenge in the first place? So, although I agree that that would be a way to limit an adverse ruling, I don't think that's the way to approach this. And let me say a couple of things about that specifically. I don't think it's right to view Bob Jones and George as out of step with modern interpretation, in particular because those cases applied the text of the statute and they specifically repudiated brief departures in this court's history from following the text. As Bob Jones explained at some length from page 742 onward, there were periods, briefly, where the court didn't follow the text, contrary to what it had done for the first 50 years of the statute. And the court returned to that in Bob Jones. That's what the court does today and that's the way the court should approach this. And in terms of the onset of modern administrative law, I think the APA and Abbott Laboratories are fully consistent with this. Both of those sources recognize that when Congress chooses to make an exception to pre-enforcement review or to channel review in a particular way, that neither the APA nor the principles that Abbott Labs discussed stand in the way. They expressly recognize that Congress can do that. Justice Barrett, Mr. Bond, earlier you said and you say in your brief that something like the tax penalties associated with the EPA's fuel standards might be too far downstream to come within this. What is the test for that? I mean, I understand you articulated some of the differences that this is housed in another agency but also enforced by these penalties that are considered taxes. I mean, otherwise you have a pretty bright line. It's called a tax, then the AIA applies if it's called a penalty, it's not. So, if you're willing to say that there should be some exception or some carve out in that context like the EPA's fuel standards requirement, what would it be and why should we go with a bright line in this circumstance? So, I think, I would put it a little bit differently. I'd say that there is a bright line rule that covers cases where the complaint on its base seeks relief that would restrain a tax. That's this case. The question is, how much further beyond that, if at all, does the AIA extend? Now, in our view, it would extend to some extent beyond that where, for example, the suit seeks a declaration that a particular requirement that is backed by taxes is invalid and unlawful and can't be enforced even if the suit on its face doesn't take the additional step of requesting injunctive relief because, of course, that declaratory judgment will have the inevitable effect of barring enforcement by the IRS through taxes and it's still fairly imputed to the suit as a purpose. I think, as you move further along that spectrum, it does become more attenuated and I think it depends in particular on how that other regime works and how it is incorporated into tax law and what relief the plaintiff seeks. But I think the easy path here is to reserve all of those questions and say, when the suit on its face seeks to enjoin enforcement by taxes and that's what petitioner's suit seeks, it is barred and I think you can leave open the questions of what happens when a plaintiff seeks relief against one method of enforcement of a requirement that is also enforced by other means. I think the easy way to resolve this case is to apply the text to the situation in front of you which is straightforward and leave any of those lingering questions for a different case. Thank you, Mr. Bond. A minute to wrap up. Mr. Bond? Thank you. Petitioner is free to litigate in a refund suit if challenged to the reporting requirement as other litigants are currently doing with respect to other similar requirements and as the court explained nearly a century ago in Sullivan, pursuing that avenue will not subject it to criminal liability. The court can avoid any doubt on that score by saying as much in its opinion but one thing we know for certain from the statutory text in 6671 is that Congress intended the penalties that Petitioner's suit seeks to render uncollectible to be treated as taxes the principal effect of which is to make them subject to the AIA. That provision thus represents Congress's judgment that disputes over those penalties belong in refund suits. Petitioner hasn't offered any way to square his position with that statutory text and the congressional judgment it embodies nor has it offered any limiting principle that would stop short of subjecting many other reporting requirements backed by taxes to pre-enforcement suits. As it has done in its prior AIA cases the court should instead adhere to the statutory text. The Court of Appeals judgment should be affirmed. Thank you, Counsel. Rebuttal, Mr. Norris. Thank you, Mr. Chief Justice.  that the United States government asks citizens to deliberately violate the tax code but that's my friend's position in this case and I think it's something that should be and that's a critical distinction for purposes of reaching the right decision here. This is not as the Anti-Injunction Act normally tells litigants pay now litigate later. This is violate the tax code now risk jail time and your professional license and if the IRS agrees to give you a penalty then litigate later. In the IRS, by the way the one that has to make the decision about whether you should receive a penalty is the would-be defendant and if my friend is right that we can not file a single report and just get a $50,000 penalty instead of the tens of millions of dollars of penalties that taking an entire tax year off would cost us then that gives the IRS a big incentive to never assess that penalty and deny us our right to go to court. The government's only response to all of this is that it would not be a crime for us to take the route that it offers. But criminality only really goes to our due process argument. Our South Carolina versus Reagan argument just requires that the government avenue be illegal. And violating the statutory reporting requirements would certainly be illegal. My friend never said otherwise in his argument. He did cite a case Sullivan about the Fifth Amendment privilege but that case actually confirms that it is in fact unlawful not to file your reports and Cheek in footnote 10 distinguishes Fifth Amendment privilege cases and says those are fundamentally different. Now, as to the government invites this court to say that it would not be willful for us to take its path but it does not ask this court to overrule Cheek and that's what the court would have to do to reach that outcome. Cheek draws a clear distinction between taxpayers who do not understand whether the tax code applies to them and taxpayers who know that it applies to them but believe a provision is invalid. That latter camp which is clearly where we fall is a willful violation that would subject us to criminal risks. And I would just close by saying this court frequently hears arguments from the government that don't worry we won't apply a criminal statute according to its text but those types of arguments rarely succeed. They've been rejected in cases like Marinello, Stevens, and others and this version of that statute is not a crime anywhere below and the government's argument now directly contradicts sections 40.05 and 10.05 of the criminal tax manual which adopts our reading of Cheek and is what line prosecutors would actually use to make charging decisions. We ask that you reverse the judgment of the 6th Circuit. Thank you counsel. The case is